DANA CORPORATION v DEPARTMENT OF TREASURY

Docket No. 255984. Submitted April 12, 2005, at Lansing. Decided August 18, 2005, at 9:10 a.m. Leave to appeal sought.

Dana Corporation brought an action in the Court of Claims against the Department of Treasury, seeking a refund of over $4 million in single business tax payments for the years 1997 through 1999 because the capital acquisition deduction (CAD), MCL 208.23(e), is not fairly apportioned under the Commerce Clause of US Const, art 1, § 8, cl 3. The CAD allows taxpayers to reduce their Michigan single business tax base by the amount expended during the tax year to acquire fixed capital assets for use in Michigan. The court, James R. Giddings, J., granted partial summary disposition for the plaintiff, concluding that the CAD is violative of the Commerce Clause because it is not internally consistent and thus not fairly apportioned. The defendant appealed.

The Court of Appeals *held*:

Consistently with the decision in *Jefferson Smurfit Corp v Dep't of Treasury*, 248 Mich App 271 (2001), and the rule of stare decisis, the CAD is fairly apportioned, does not discriminate against interstate commerce, and is constitutional.

The Court in *Jefferson Smurfit*, in deciding that the CAD does not discriminate against interstate commerce, also decided that the CAD is fairly apportioned. The four-part test for determining the constitutionality of state taxing statutes under the Commerce Clause requires that the tax must be applied to an activity with a substantial nexus to the taxing state, it must be fairly apportioned, it must be nondiscriminatory, and it must be fairly related to the services provided by the state. The third part of the test, discrimination, concerns whether the statute is facially discriminatory against interstate commerce, has a discriminatory effect, or was enacted for a discriminatory purpose. A fair apportionment analysis essentially constitutes a part of a discrimination analysis.

Reversed.

TAXATION — SINGLE BUSINESS TAX — CAPITAL ACQUISITION DEDUCTION — CONSTITUTIONAL LAW — COMMERCE CLAUSE.

The portion of the Michigan single business tax that relates to a deduction for the acquisition of capital equipment for use in

Michigan is fairly apportioned, does not discriminate against interstate commerce, and is constitutional (US Const, art I, § 8, cl 3; MCL 208.23[e]).

*Honigman Miller Schwartz and Cohn LLP* (by *Patrick R. Van Tiflin, June Summers Haas,* and *Daniel L. Stanley*) for the plaintiff.

*Michael A. Cox,* Attorney General, *Thomas L. Casey,* Solicitor General, and *Glenn R. White,* Assistant Attorney General, for the defendant.

Before: FORT HOOD, P.J., and METER and SCHUETTE, JJ.

METER, J. Defendant appeals as of right from an order granting partial summary disposition to plaintiff. Plaintiff sought a refund of taxes paid to defendant under the Single Business Tax Act (SBTA), MCL 208.1 *et seq.*, for the years 1997, 1998, and 1999. Plaintiff alleged that the site-specific and apportioned capital acquisition deduction (CAD) codified at MCL 208.23(e) is not fairly apportioned under the Commerce Clause of the United States Constitution, US Const, art I, § 8, cl 3. The Court of Claims agreed with plaintiff that the CAD is unconstitutional and ordered defendant to refund plaintiff $4,864,436, plus statutory interest. We reverse.

The SBTA is a "consumption-type value-added tax" that is subject to certain exemptions, exclusions, and adjustments. *Caterpillar, Inc v Dep't of Treasury,* 440 Mich 400, 408-409; 488 NW2d 182 (1992). Among these adjustments is the CAD. *Id.* at 409. The CAD statute allows taxpayers to reduce their tax base by the amount expended during the tax year to acquire capital assets. *Id.* Since the enactment of the SBTA in 1975, the CAD statute has been altered several times. See *Jefferson Smurfit Corp v Dep't of Treasury,* 248 Mich App 271,

274-276; 639 NW2d 269 (2001). At issue in this case is the CAD statute effective during the years 1997, 1998, and 1999; it is contained in MCL 208.23(e), which reads as follows:

> Except as provided in subdivisions (g), (h), and (i), for a tax year beginning after December 31, 1996 and before January 1, 2000, deduct cost, including fabrication and installation, paid or accrued in the taxable year of tangible assets of a type that are, or under the internal revenue code will become, eligible for depreciation, amortization, or accelerated capital cost recovery for federal income tax purposes, provided that the assets are physically located in this state for use in a business activity in this state and are not mobile tangible assets. This deduction shall be multiplied by the apportionment factor for the tax year as prescribed in chapter 3.

The SBTA provides that if subsection 23(e) is declared unconstitutional on appeal and that decision is not under appeal, the subsection becomes ineffective and MCL 208.23(i) takes effect. MCL 208.23(i); MCL 208.23a. MCL 208.23(i) allows a CAD for the apportioned cost of tangible assets but removes the requirement that the assets be located in Michigan.

Plaintiff is a Virginia corporation that supplies "components, modules, and complete systems to vehicle manufacturers and related aftermarkets." Plaintiff conducts business in Michigan; this includes the operation of eleven manufacturing facilities and several sales offices. During the years at issue, however, approximately 90 percent of the products plaintiff sold to Michigan customers were produced outside Michigan.

Plaintiff filed amended SBTA returns for the years 1997, 1998, and 1999, claiming that refunds were owed it for each year because the CAD is not fairly apportioned and discriminates against interstate commerce. Defendant denied the refund claimed in the 1999

amended return, and plaintiff filed suit based on that denial in June 2001. That claim was held in abeyance pending resolution of *Jefferson Smurfit* and remained in abeyance at the time of the filing of the present complaint.

After the resolution of *Jefferson Smurfit*, defendant denied all three requests for refunds, stating that the CAD was constitutional. Defendant filed suit again, claiming that it was entitled to a refund of $4,864,436 for the three years at issue. The Court of Claims granted partial summary disposition in favor of plaintiff, holding that the CAD violates the Commerce Clause because it is not internally consistent and thus not fairly apportioned; the court awarded plaintiff the requested refund.

Defendant argues that the decision of the Court of Claims must be reversed because it is contrary to the holding in *Jefferson Smurfit, supra* at 281, a case in which the Court deemed the CAD constitutional. Plaintiff, in contrast, argues that *Jefferson Smurfit* did not address the central question at issue in the present case, i.e., whether the CAD is fairly apportioned.[1]

---

[1] Plaintiff contends that defendant "has waived any argument that the site-specific, apportioned CAD meets the fair apportionment internal consistency test" because defendant did not make a proper argument below and did not submit an affidavit below to rebut plaintiff's affidavit. See MCR 2.116(G). This argument is without merit. Defendant explicitly argued below that the CAD statute was constitutional. Moreover, plaintiff's affidavit merely reiterated information from its complaint, and defendant then argued that the *law* was in its favor, even though plaintiff moved for summary disposition under MCR 2.116(C)(10), which, in general, focuses on facts rather than law. Defendant focused on the law and argued that it was entitled to summary disposition under MCR 2.116(I)(2) and MCR 2.116(C)(8). Defendant was not required to submit an affidavit to make its law-based argument, and, in failing to assert a factual dispute, defendant did not lose its right to assert a legal dispute. We note that MCR 2.116(C)(10) states that summary disposition may be

We review de novo a trial court's grant of summary disposition. *Spiek v Dep't of Transportation,* 456 Mich 331, 337; 572 NW2d 201 (1998). The constitutionality of a statute is a question of law that is also reviewed de novo on appeal. *Tolksdorf v Griffith,* 464 Mich 1, 5; 626 NW2d 163 (2001). All statutes are presumed to be constitutional. *Jefferson Smurfit, supra* at 277. If tax legislation is at issue, then the presumption is especially strong. *Id.* Until a taxing statute has been shown to "clearly and palpably violate[] the fundamental law," it will not be declared unconstitutional. *Id.* (citation and quotation marks omitted).

The plaintiff in *Jefferson Smurfit* challenged the CAD statute, MCL 208.23(e), that was in effect during the years 1997 and 1998 and requested a refund of taxes paid, alleging that the site-specific and apportioned CAD violates the Commerce Clause "because it burdens out-of-state businesses and thus discriminates against interstate commerce." *Jefferson Smurfit, supra* at 276-277. The Court ruled that the CAD did not discriminate against interstate commerce, and it therefore rejected the plaintiff's claim of unconstitutionality. *Id.* at 278-281.

At least in broad terms, the facts and issues were the same in *Jefferson Smurfit* as they are in this case—an interstate company requested a refund for taxes paid in 1997 and 1998 (and 1999 in this case) on the basis of a claim that MCL 208.23(e) violates the Commerce Clause. However, plaintiff asserts that there is a crucial difference between this case and *Jefferson Smurfit.* Specifically, plaintiff claims that this case concerns fair

---

granted when "there is no genuine issue as to any material fact, *and the moving party is entitled to judgment or partial judgment as a matter of law.*" (Emphasis added.)

apportionment, whereas *Jefferson Smurfit* concerned the discriminatory effect on interstate commerce of MCL 208.23(e).

In *Complete Auto Transit, Inc v Brady*, 430 US 274, 279; 97 S Ct 1076; 51 L Ed 2d 326 (1977), the United States Supreme Court noted the existence of a four-part test for determining the constitutionality of state taxing statutes under the Commerce Clause. Under this analysis, a tax must be (1) applied to an activity with a substantial nexus with the taxing state, (2) fairly apportioned, (3) nondiscriminatory, and (4) fairly related to the services provided by the state. *Id*. Plaintiff argues that, while the claim in *Jefferson Smurfit* was generally the same as that raised here—i.e., that MCL 208.23(e) is unconstitutional under the Commerce Clause— *Jefferson Smurfit* only considered the discrimination aspect of the Commerce Clause analysis and did not address whether the site-specific and apportioned CAD is fairly apportioned under the Commerce Clause. Defendant, on the other hand, contends that the substance of the Court's analysis in *Jefferson Smurfit* was identical to the issue currently raised by plaintiff.

The pertinent question, then, is whether the specific *Jefferson Smurfit* analysis—which, nominally at least, focused on "discrimination"—and an analysis focusing on "fair apportionment" can be considered substantively identical.

A "discrimination" analysis involves deciding whether a statute "(1) is facially discriminatory against interstate commerce, (2) has a discriminatory effect, or (3) was enacted for a discriminatory purpose." *Jefferson Smurfit, supra* at 278. In *Jefferson Smurfit,* the Court briefly concluded that the CAD statute was not facially discriminatory and was not enacted for a discrimina-

tory purpose. *Id.* at 279-280. With regard to "discriminatory effect," the Court's entire analysis was as follows:

> States may compete with one another for a share of interstate commerce, they just may not discriminatorily tax the products manufactured or the business operations performed in other states. *Boston Stock Exchange* [*v State Tax Comm,* 429 US 318, 336-337; 97 S Ct 599; 50 L Ed 2d 514 (1977)]. Here, the CAD is available to all Michigan taxpayers who locate new property in Michigan, whether intrastate or multistate businesses, and it is available at the same apportioned rate as is applied to the taxpayer's overall tax base. The three-factor apportionment formula of the SBTA has survived constitutional challenge, see *Trinova* [*Corp v Dep't of Treasury,* 498 US 358, 387; 111 S Ct 818; 112 L Ed 2d 884 (1991)], and the availability of an apportioned CAD in a given tax year is not dependent on the initial location of the taxpayer's assets, but rather turns on the taxpayer's election to increase its Michigan investment.

> We conclude, therefore, that the CAD provision is not designed to punish multistate taxpayers who choose not to increase their Michigan presence. Moreover, we are not convinced that the CAD provision is responsible for any deleterious effects suffered by multistate taxpayers who opt to increase activity outside Michigan. Accordingly, we note agreement with an analysis adopted by our Supreme Court in *Caterpillar, supra* at 425:

> "Generally speaking, the overall tax consequences to a multistate taxpayer will be dependent upon the nature of its business activities and whether it is eligible and elects to avail itself of the tax reduction incentives afforded by the [single business tax]." [Pollock, *Multistate taxpayers under the Single Business Tax Act,* 22 Wayne L R 1101, 1113 (1976).]

> We hold that the site-specific CAD available pursuant to subsection 23(e) has no discriminatory effect on interstate commerce. [*Jefferson Smurfit, supra* at 280-281.]

The Court in *Jefferson Smurfit, supra* at 280, emphasized that the CAD "is available at the same apportioned rate as is applied to the taxpayer's overall tax base." The Court, citing *Trinova, supra* at 387, noted that "[t]he three-factor apportionment formula of the SBTA has survived constitutional challenge . . . ." *Jefferson Smurfit, supra* at 280. In *Trinova,* the United States Supreme Court considered whether the rate applied to the taxpayer's overall tax base under the SBTA was fairly apportioned. *Id.* at 380-387. The *Trinova* Court mentioned "the requirement of fair apportionment, as expressed in the tests of internal and external consistency." *Id.* at 385.[2] The Court indicated that Michigan must only tax "its fair share of an interstate transaction," *id.* at 386 (citation and quotation marks omitted), and the Court concluded that, "as applied to Trinova during the tax year at issue, the Michigan SBT[A] does not violate the . . . Commerce Clause[] of the Constitution." *Id.* at 387. Clearly, the *Trinova* Court addressed the elements of "fair apportionment." See *Caterpillar, supra* at 417-419 (indicating that a fair apportionment analysis focuses on whether an entity is taxed only for activity attributable to the taxing state and uses the concepts of "internal consistency" and "external consistency").

The *Jefferson Smurfit* Court's discussion of *Trinova* and its statement regarding apportionment convinces us that the Court in *Jefferson Smurfit* did in fact conclude that the CAD is fairly apportioned. As noted in *W A Foote Mem Hosp v City of Jackson,* 262 Mich App

[2] The concept of "internal consistency" addresses whether, if every state were to use the same taxing scheme, no more than 100 percent of a taxpayer's business activity would be taxed. *Caterpillar, supra* at 419. "External consistency" addresses whether the tax in question covers only that portion of value attributable to business activity within the taxing state. *Id.*

333, 341; 686 NW2d 9 (2004), "[t]he rule of stare decisis generally requires courts to reach the same result when presented with the same or substantially similar issues in another case with different parties." The rule of stare decisis mandates that published decisions of this Court are precedential and binding on lower courts and tribunals. MCR 7.215(C)(2). "[A] case is stare decisis on a particular point of law if the issue was 'raised in the action decided by the court, and its decision made part of the opinion of the case.'" *Terra Energy, Ltd v Michigan*, 241 Mich App 393, 399; 616 NW2d 691 (2000), quoting 20 Am Jur 2d, Courts, § 153, p 440. We conclude that because the issue of the CAD's constitutionality was raised, in general, in *Jefferson Smurfit*, and because the *Jefferson Smurfit* Court made the issue of apportionment "part of the opinion of the case," we are bound to follow its holding regarding apportionment. The CAD is fairly apportioned, and the Court of Claims erred in concluding otherwise.

Plaintiff emphasizes that the *Jefferson Smurfit* Court explicitly stated that the "issue here is the third prong of the *Complete Auto* test," i.e., whether the CAD discriminates against interstate commerce. See *Jefferson Smurfit, supra* at 278. Plaintiff contends that *Jefferson Smurfit* therefore does not constitute precedent for purposes of the instant case. Regardless of how the *Jefferson Smurfit* Court framed the issue initially, however, the Court made a conclusion regarding fair apportionment. To accept plaintiff's argument would be equivalent to elevating form over substance. The substance of the Court's holding makes clear that it was addressing the issue we face in this case.

Moreover, the concepts of discrimination and fair apportionment are related; a fair apportionment analysis essentially constitutes a *part* of a discrimination

analysis. As noted in *Armco, Inc v Hardesty*, 467 US 638, 644; 104 S Ct 2620; 81 L Ed 2d 540 (1984), "[a] tax that unfairly apportions income from other States is a form of discrimination against interstate commerce." See also *Trinova, supra* at 385 (indicating that a fair apportionment analysis is a primary component of a discrimination analysis). If we were to agree with plaintiff that the site-specific and apportioned CAD is not fairly apportioned, then we would be finding that the CAD discriminates against interstate commerce, which would contradict this Court's conclusion in *Jefferson Smurfit, supra* at 281. We instead find that the CAD is fairly apportioned, does not discriminate against interstate commerce, and is constitutional.

Reversed.